All right, the next case we'll hear this morning is Scratch Golf versus Beaufort County and we'll hear first from Mr. Tibbles. Yes, sir. Thank you, Your Honor. May it please the Court, Jeff Tibbles on behalf of Appellant Scratch Golf, LLC. I'd like to start our discussion this morning with policy and the question that I have is whether we've reached the point in the circuit where the scales have tipped so far in favor of local governing bodies that they can act with absolute impunity in rendering rezoning decisions to the point where local elected officials can oppose legitimate and governing planning goals by intimidating planning commission members, creating and soliciting signatures for online petitions that disseminate false information to the public and to the disparaging landowners with epithets to the press as well. I hear you and first of all, it looked to me like the development was a sensitive, well thought out development and reacted to a lot of comments as you went along. But in the end, the County Council voted it down 9-2. And so whatever Mr. Vaughn did, he persuaded or pressured or whatever nine members or eight other members to vote against this project. And he did it through various methods but he alluded to basically he didn't want more development. He was opposed to development. I guess he was worried about almost all rural areas have that element in them and it's always a ground political fight. The question is why you couldn't have targeted him very early on to try to get him on board before you suffered all these political battles. But it sounded to me like a regular old-fashioned political campaign and he said things that were exaggerated but he still appealed to the aesthetics and the environment and the traffic and all that stuff. And he had the public against it. But in the end, while you may address him, you have to be you're asking us to assess and evaluate a democratic process which was maybe dirty in the sense of politics, so to speak. But that was their privilege. They can vote any we can't go second guess their votes. We can second guess a process that violates the Constitution. But it seems to me they had a structure that was set up by law. They followed the various procedures. They had the votes. He was able to get petitions. He was able to get a bunch of naysayers into the library and the council before the council and all that. He, not to say a sort of crassly democratically, outmaneuvered you. Yes, your honor. And I understand that perspective. However, let me give you a little bit. For us to get involved, there has to be something. It seems to me it's going to have to get to some constitutional level. Don't you agree? I agree. And I think it's gotten there because I do think that there are property rights that are at issue here in this case. I do think that the landowner had a protected property interest in this case. In what? In a couple of different ways. Number one, in a very general way, as we all understand and know. You still own the property, right? The client still owns the property. So you wanted to develop it. You came up with a plan. You got through various approvals. It's a little bit different, your honor. With all due respect, the government selected this property as being appropriate to solve community needs in the county. The planners picked this property. They put a star on this property. The planning commission voted for approval. So the comprehensive plan and the CDC both designated this property as a village place type. That qualified you as a developer, but it didn't mean that everything you came forward with would be approved. It didn't, but the reason we were not asked, the client was not asking for everything to be approved. The client was asking for zoning, which was consistent with the county's stated and adopted goals. And so the county council by 9-2 voted against the change. They did. And so now you want us to do what? Tell the county you can't vote that way? The government giveth and the government taketh away, but it's what happened in between that's the problem. The problem is... In effect, you want us to reverse the county vote, right? In effect, I want you to make the client whole for all of the expenses and issues that it had to go through in reliance upon the county in making the applications in accordance with the county's requests in having an economic development report that cost hundreds of thousands of dollars. There was a lot of... If I could jump in and try to help decipher this, because I think you, as I understand the law, and you probably agree with this general principle, you have to get beyond an expectancy to an entitlement. Do you agree with that general principle? I do, your honor. And then we look to state law to determine whether you have that, you've risen to that level. Correct. I can appreciate that you're going to say, we have... This case is factually different than Horvitz and some of the others, but what's the best case you have that says what we have here gives you a property interest? Well, there are, as far as the property interest specifically, there are a number of things, but Scott... And my question is... Let me just say one more thing to try to help you answer as best you can. If the point is we're further along than the... We got more than Horvitz and all that sort of stuff, but has there been a case in South Carolina that when a... It's closely similar where the court has said, yeah, there's a property interest. Yes, I would say you have to go back to Rushing versus City of Greenville in 1975 where the area had changed and there was a... It was a previously residential use and it became no longer feasible to use that for residential purposes and they requested a rezoning. It was denied and the denial was arbitrary and violated their due process. And so, the problem that I see is if you don't ever have any right to have your property... And I get it. I understand. We're not sitting here today, standing here today asking that the property be zoned or should have been zoned for the highest and best use. We're not asking that the property should have been zoned for any use at all. What we're asking is for a fair process when the county designates this property as a village place type and says, this is the zoning that you need, encourages the landowner, walks the landowner through the process hand in hand in a team effort to get the property rezoned for the county's stated goals that are adopted by the council. Right. So, and I hear you. And those are facts that may be real helpful. The struggle is whether they create an entitlement when there's still discretionary decisions to be made. And our law is pretty clear that if there's any discretion, you know, then there's no property interest. And the code says there's still discretion. Yes. So, why is not the, you know, good, you know, fairness arguments that you're making, you know, persuasive to a state court, you know, a stop all type claim, you know, but maybe perhaps other state court remedies, but not a constitutional claim. Let me answer that. I think those are two questions, so let me answer them both in turn. The first question is, if the issue is any discretion, why do we meet that standard? And first of all, that comes from the Gardner decision. And the Gardner decision also says only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured. We're alleging, we're on a 12B6 motion here. We've stated sufficient allegations of fact to say that our application was virtually assured on the basis of the county conduct leading up to it. So, I think a no... But I thought you just read... Is assured. Application for what? Application for rezoning. Well, the application for rezoning can't be assured until there's a vote. It's virtually assured. But I thought Gardner said, if the... Read again for me what it said. It didn't say if you're led to believe it's virtually assured. It said something about if they're restricted, if their discretion is restricted. And Gardner has a couple of different provisions in the opinion. Right. And one of them talks about... You mean you're virtually assured when you're relying on... Only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured. Right. So, that seems to me to be pointing us, like Judge Quattlebaum was saying, to the discretion that the decision maker has. We have to look at the code and see, at this point in time, do they still have such discretion that it's not virtually assured? Not look at the facts and see, boy, they were making lots of promises to you guys and making you think that this was going places. I understand that and I appreciate that point, Judge Rushing. My point in response would be, if we have any discretion standard, if there is any discretion, if that's the standard, then it leads to abuse of discretion because there's no review process. Nobody is monitoring these people. And if I were the county attorney... The answer, I think, is that the taxpayers are. And because... Look, just reading this, you may be right. They may have led you down the road. You may have relied on it. You may have spent a bunch of money. You may have a good project. And then someone who's aligned with another developer may have come in and squelched it. I'd be mad as I could be if that's what happened. And I get that it might be actionable. But the code isn't that, at least in writing, isn't that... Getting the exact wording of Gardner a little different. So it seems like they still, at least in writing, have a lot to do. And they may have... So sometimes things are not constitutional and the accountability comes not from the federal courts, but from the taxpayers. And thank you, Judge Quavobam. I understand. And let me address your prior question about state remedies because we didn't quite get there. In terms of state court remedies, there's a State Torts Claim Act, as you are familiar with, and that has specific carve-outs for legislative activities and also has a cap for $300,000 for recovery. And so those are the reasons that... You probably may not have much state court options. You pled a reliable claim, so presumably that's a claim. I mean, probably isn't your favorite claim, but it's a claim. Right. Yes, Your Honor. And so I don't think that we have adequate state court remedies for this particular case. And again, I would just try to look at this case holistically in terms of the overall policy that we're putting on rezoning activities or zoning activities. And I think there's a Supreme Court case in Arlington Heights that says that a landowner should be free of arbitrary zoning process. There are cases in South Carolina that follow that same reasoning. In the Harvick case, even though it went against the landowner, the Harvick case had standards that are actually favorable in our case. And that is that the decision-making. And in fact, it said... Let me ask you this. Who designated you or indicated to you that you were selected and that they liked your plan? What body was that? Originally, I believe it was the... Well, the council adopted the community development code and the comprehensive plan, both of which... I'm talking about the actual... In this case, you were encouraged to go forward and spend all the money. And you said some government entity... Well, that's what I'm saying. The council, through their planning... They vote on something? Yes, they voted on the... What did they... A product of the vote? The product of the vote was the comprehensive plan that placed the star on this property for village place type. And that kicked everything off. The county said... They had done all these studies... They put a star on it and said, this is open for redevelopment? Well, they did studies that cost them millions of dollars... I'm asking you the vote. Yes. What did the votes actually conclude? Well, the vote on the rezoning or the vote on the CDC? You told me they put a star on it. So what did they actually conclude in that? They concluded that they needed this property for a village place type so that they could have a community for people to work, live, and play to avoid some of the problems that they were having in the community about sprawl... The general conclusion that that was open for development. I see I'm red, but... No, go ahead. Okay. The conclusion was that, yes, this place deserves and needs for the community... Did they identify a scratch golf? Yes. Our property specifically is what they identified. Well, I'm not your property. They say you were the developer, should be the developer? They said, this is where we need what we need, and you all go through this process. Okay. Now, did you assume or could you assume that that was a guarantee that that would be approved in the end? I don't know that there could be a guarantee. Well, it always has to get by there because the code wasn't amended. Right. And the approval was done pursuant to the code. There are general property rights of use and enjoyment. And if you can't do that free of government interference, when you have the government saying, this is what we want you to do, do these things in reliance upon our promises. Do these things in reliance upon good growth plans. Is that in the record? Yes, your honor. Approval? Just that approval, I put the star on. That's the only thing you could rely on for your property interest, I think. Yes, your honor. Shall I get to that and rebuttal so that we can save time? Yeah, sure. Why don't we do that? Okay. Mr. Cox, why don't we hear from you? May it please the court. William Cox for Beaufort County. First of all, thank you all for having us up here today. I've enjoyed getting prepared for this hearing, and I hope I still enjoy it afterwards. But for starters, as your honor just pointed out, the only possible thing that might have even alluded to them having a property interest here, which they don't, was this village place type designation over a portion of their property. The comprehensive plan, which is referenced throughout a code, and the code requires that the county council in making any zoning decision, and it's just the county council, there's no planning director, there's no planning commission. In terms of all the decisions that were made regarding their property, all of that was discretion and authority was conferred upon the county council. And seven point... So, you know, this case is a real gotcha case. If you talk about a developer working with the county, they did it. They made modifications, adjustments. They seem to comply with what was intended. The problem was... ...recommendations. And there's a reason that Beaufort County has this safeguard in place, because the council doesn't work for the planning director. The council doesn't work for the planning commission. The council works for the constituents of Beaufort County, and they have to listen to their constituency. And notwithstanding, the planning director at that time, his desire and agreement with the developer that this would be a good fit and use for the property and for the county, notwithstanding the planning commission agreeing that this would be good for the county, it's ultimately the county's council's decision and their discretion to approve or to not. Council, so... The issue on property interest in broad terms is entitlement versus expectancy. But it's not that... It's not your position, I don't think, or maybe it is, that until it's approved, they don't have a property interest. First of all, is that your position? That is my position. And to the village place type designation, that was on map 4-9 of the comprehensive plan of future land use. They had to... They filed a request to have the official zoning map amended, which their zoning was designated as T-2 rules. What if... And the future zoning map, the future land use map, 4-7, also continued to designate their property as T-2 rule. So they not only had to seek a rezoning of the official zoning map, they also had to get an amendment to the future land use map, which continued to designate their property as T-2 rule. Now, to the point of their property fitting the requirements of the place type overlay, yes, there is map 4-9, which designates various properties throughout the county that meet different levels of place type overlay. And the village place type was marked on their property. But that mark in and of itself doesn't confer them the right to have their property rezoned village place type. That designation actually provides further restrictions on their property so that if you want to develop it as a village place type, you have to comply with all those requirements. And on top of that, notwithstanding the requirements, the council still has the discretion. So what I was going to ask, let's assume you have a situation where your zoning criteria are you get approval if you're in the general area. And unless it's more than 1,000 acres, you know, unless you have purple buildings, and unless you have a, you know, a dump in this part of your development. And none of those things, the plan doesn't have meets all those criteria. In that situation, you don't have an approval yet. But would you agree that you have a property interest? I don't believe so. So there's no discretion there, right? Those are three objective criteria. In that hypothetical, the county council, the decision-making body has no discretion. Yes, under the, you know, in certain instances. So you don't, that's, so earlier when you say you have to have the approval, that's not right. You just have to, if they're, you know, the discretion is what is, it seems like it's the factor. You agree? I mean, I think you still can, I'm not trying, I mean, you may want to fight that. But, I mean, if you have three objective criteria, does a landowner at that point, and there's no room for discretion? Are you saying at that point? There is absolute discretion here. I mean, this hypothetical doesn't exist under these facts. That's why it's a hypothetical. I'm just trying to test your, the theories out. So, I mean, so, I mean, I get the argument very clearly that discretion is, you know, the thing that keeps this from being an entitlement to expectancy. I'm just trying to figure out where that line is. And then we have this, the Gardner case that talks about you can even have some discretion. But if it's narrow, then it seems like you might have a property interest. So I'm just trying to figure out, I mean, we got to decide not just this case, but how it applies to all these other cases that might come in the future. And I'm trying to figure out how we square your position with Gardner, which seems to allow some sort of discretion. And your opponents are going to say, we're kind of like Gardner, or that language in Gardner. There's just minimal discretion given everything else. Well, first off, I think this court's decision in Horn, which came after Gardner, is exactly on point for this case. And so y'all affirming Judge Gergel's ruling will keep the case law clear in the Fourth Circuit, which is that you must have the cognizable property interest. And any amount of discretion, not a little bit of discretion, is any significant discretion conferred upon that counsel defeats the property interest. Any significant. Any significant. And here, all the discretion is conferred to counsel. It's not just a little bit, it's all. And it says under every single provision of our code, for a code amendment, for a text amendment to the comprehensive plan, for a map amendment to the comprehensive plan, to a place-type overlay amendment, which would be Map 409 and any sort of text, that it is the county counsel's legislative discretion, one. That in and of itself defeats this. But moreover, that not any one factor to which the counsel is encouraged to look at the guidelines that are set forth in the comprehensive plan, and also reiterated again in the code, not any one factor on which they decide to make their decision controls. And so, again, that was put there as a procedural safeguard, so that ultimately, again, while you have these different staff members who are working with the developers. So in these facts, if you, these very, this very situation, and let's assume the record, there's not a public outcry or public opposition. Let's assume, you know, there's evidence that someone overheard one council member say, look, I just don't like that guy. Yeah, we're not approving this. Does the fact that there's discretion immunize a county from having a due process claim if they, you know, behind the scenes, it was clear they said, we just did it for that reason, and then said, well, we're exercising discretion not to do this. I don't think it immunizes them because, one, the claim would be most appropriately brought to the state court, not the federal arena. That's the reason we have these cases and all this precedent. Right. But from a federal constitutional standpoint, you're saying that you'd still, that they'd still lose? I apologize, I'm replaying. Yeah, no worries. So the hypothetical is now, if the council out loud says, we're denying this for any number of rational bases, you know, traffic, financing, color, whatever, but really the ulterior motive behind closed doors is, well, council member A just wants to buy that property for a reduced price, or he actually wants to be the developer. Something like that. I think, first off, to get into the federal arena, they would have had to have a cognizable property interest, and under our code, which is what you must look to here, them meeting the requirements for a village place type development does not get them past and does not get them that interest because, again,  to approve their rezoning request. And I think that ties into another reason why this case is not appropriate for this court right now is because there's nothing stopping the current propaganda from seeking the same rezoning request today in a different council from voting in a different way. Can you tell me what state remedies they have? They... My view's a little skewed, obviously. I don't think they have state remedies at all, and... Well, when I say that, I don't mean to say they win. I'm just saying, if you don't have a constitutional claim, does a landowner have potential state remedies? I should have said it that way. I didn't mean that they would perfect... What are they? There's a vested right to that where, you know, but in that instance, there must have been some right that was then changed and taken away from you. Here, they never had that right. Right, right. I think there's some cases in Maryland and are similar circumstances that if you can demonstrate that the council did not consider the factors given by statute for consideration and approving, then that action could be reversed. But it seems to me you'd have to go through all the criteria for zoning and decide whether they violated their own zoning code. Correct. Also, the record is complete, and there's no question of fact that they might not like the outcome. They did like the outcome. And they obviously developed an expectation that it would get approved because certain staff members were telling them, this is great. This is good. You're doing this. We're going to recommend approval, which they did. But both parties, throughout the whole chain, failed to appreciate that it was still the council's discretion and their sole discretion. And the attached to the complaint... I don't want to... I appreciate this emotion in 1286, but they attached to their complaint. The minutes from that May 22, 2017 county council meeting, where the council voted to deny their rezoning request. And I would submit to you to have looked at it time and time again. At least the one council member they complained of, he suggests a whole host of reasons as to why he doesn't believe that their rezoning request meets the spirit of the code and recommends a no vote. And there's several other council members who do as well. And on their side, there's two council members that say, well, this is arbitrary and fruitless. I would submit that if there were any real illegitimate actions of one council member, there were two other council members clearly in their favor who voted in favor of the rezoning. All of that is, again, a reason why the federal court is not to get involved in local land disputes because it is very political. This property is one of the last properties of its size in Beaufort County. And Beaufort County prides itself on preserving rural land, which is why the future land use map continued to designate their property as T2 rural. When the council adopted the comprehensive plan and the code that the council at that time wanted to change their property, they could have done so, but they kept their property T2 rural because that is extremely important to the citizens of Beaufort County. Further, the comprehensive plan, as they noted out, was amended several times after its initial adoption. At any time during those amendments, the council and only the council could have amended their future land use designation, but it didn't do so because that's not what the constituents wanted at that time. And I'll just close with this again. The comprehensive plan is trying to be like a basketball and, hey, the county might grow one day and we might need more development. We might need this. And so the whole point of the comprehensive plan is to identify areas around the county where certain development and certain preservation efforts should be taken. And that's what it's done. The comprehensive plan didn't say, we need to redevelop a scratch ball property today and right away. Otherwise, it would have gone ahead and rezoned it however they saw fit. But they kept it zone T2 rural, which is how they saw fit. And it's their power to do that. With that, I'll yield my time unless you'll have any other questions. All right, thank you. Mr. Tibbles. Your Honor, thank you again. I just want to go back to what Judge Schneemeyer asked. And so we do have some places in the record where... I was looking for the approval of that property. You said put the star on that property. Yes, yes, Your Honor. That was the adoption of the comprehensive plan. And that's on the record at page 25, JA 25, and specifically paragraphs 45 and 46. Well, that's the complaint. I'm looking for the actual document. For the actual comprehensive plan? Whatever was adopted. In other words, I'd like to see the language of what counsel said. Of what specifically was adopted. It seems to me that's your best hook. Because if they said... For instance, if they said, we're going to approve the rezoning of this property as long as it's substantially consistent with the plan we've seen. That gives you a lot of legs. Right, okay. Let me deal with something else right now. I'm going to have to come back to that. I want to touch on what my colleague has said about the final meeting. And Mr. Vaux did make a number of statements. It's alleged in the amended complaint that he was handed a piece of paper. That that piece of paper had certain grounds that he paid lip service to that had no basis in reality. And that were actually entirely pretextual. And the other problem with the final meeting is that counsel... On that point, and I'm sorry to interrupt you. But don't our cases say that we look to whether there can be any reasonable basis. And we don't look to the subjective mindset of a particular government. That was kind of the point of my hypothetical is that you can have someone who's got, I think under our precedent, motives that aren't perfect. And we don't look to that. We look at could there be a reasonable basis for it. I'm familiar with that doctrine, Your Honor. And Judge Gergel raised it in his order. But there's also an opportunity for the plaintiff to rebut that, those rational bases. And if the plaintiff can rebut those rational bases and show that there's no substance behind them, then you can make out a claim for equal protection. And so I believe on the face of the amended complaint, we rebut each and every one of those statements that Vox made in support of the denial. One other critical issue that I... That doesn't help you. Vox doesn't help you because you've got eight others that constitute part of the vote. And they may have voted for genuine purposes. He alleged a lot of things that were legitimate on their face. It could have been pretext. That's your argument, is that they're pretext and the real motive was on any approval, I guess. But the others hearing that could buy into it. And it's a legit... I mean, basically, it's like trying to guess whether the Senate passes a law. They voted by a majority. And now you go to see whether every senator's vote was a legitimate vote. We just can't do that type of thing. Yeah, and Your Honor, I think in Marks, they actually did that kind of thing. In Marks v. City of Chesapeake, the plaintiff was actually able to take the depositions of the governing legislators and actually find out what it is. In fact, they had a trial in that case. That was a Fourth Circuit case. Equal protection. We don't even demand that the decision makers articulate the reasonable basis. We say if there's a reasonably conceivable rational basis, then it's fine, right? Then there's no equal protection problem. So they don't even have to articulate it. It could be not the real reason. We don't look at the subjective. We think, can we imagine a reasonable, a rational basis for this decision, right? It's a real tough standard. But I think I have the ability to disprove it. And I think I have the right to discover it. Now, let me say one more thing before my time's up, please. They denied us the opportunity to appear and speak and present at the final meeting. Okay, that's a due process, procedural due process violation. We were not allowed to speak. One of the members said, this is arbitrary and capricious, challenged the chair on that issue. And we were not allowed to put in our... But on that point, assuming that is true and assuming that is improper process, don't you have to have a property interest before you have... You have to have a property interest for both substantive and procedural due process violations. And if we don't have one here, I don't know how anybody could ever have one in a zoning context. Oh, I think we can go through hypotheticals on that. But I was offering to give you the possibility that if the council, which has the authority to zone, the council voted something that gave you a property interest, that's what I was asking you about. Yes, Your Honor. They approved you originally, but it doesn't do good just to have you argue they approved us going ahead. It's important to see whether they conferred a property interest or they say, we have nominated you for development of this, but it's always going to be subject to the final zoning. It seems to me inherent. You made an application after that, a very full application, and that was considered on May 22. Okay, so JA-176 is what... All right. Happy to have that. Colleague is directing us to the plan is in the record. No, it's not in the record. Excuse me. That's a committee meeting. Yeah. That's not the county council. Yeah, my time is red, but I guess that's the best we have in the record. All right. We'll do our homework on this, and for now, we'll come down and re-council and adjourn.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing